**SIGNED this 13 day of April, 2009.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**[This opinion is not intended for publication as the precedential effect is deemed limited.]**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re<br><br>    LISA MICHELLE CROSS<br><br>              Debtor. | No. 08-50531<br>Chapter 7 |
| HELEN C. TUCKER, as Executrix of the Estate of Virgil Cooke,<br><br>        Plaintiff,<br><br>vs.<br><br>LISA MICHELLE CROSS,<br><br>        Defendant. | Adv. Pro. No. 08-5029 |

**M E M O R A N D U M**

Appearances:

| Matthew H. Wimberley, Esq. | Dave B. Jordan, Esq. | Daniel R. Bieger, Esq. |
| Post Office Box 3740 | Post Office Box 5215 | Post Office Box 1296 |
| Kingsport, Tennessee 37664 | Kingsport, TN 37663 | Abingdon, VA 24210 |
| *Attorneys for Helen Tucker* | *Attorney for Lisa Cross* | *Attorney for Lisa Cross* |

**Marcia Phillips Parsons, United States Bankruptcy Judge.** In this adversary proceeding, plaintiff Helen Tucker, Executrix of the Estate of Virgil Cooke, seeks a determination that her state court judgment against the debtor Lisa Cross is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4) and (6). Presently before the court are the parties' cross motions for summary judgment, both of which are predicated on the doctrine of collateral estoppel. Additionally, the debtor asserts res judiciata as a basis for her motion. For the reasons stated below, the court grants summary judgment to the plaintiff, thereby declaring the debt owed to the plaintiff nondischargeable under § 523(a)(4), and denies summary judgment for the debtor. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

I.

On March 28, 2008, the debtor filed a voluntary petition for bankruptcy relief under chapter 7. On June 23, 2008, the plaintiff commenced the instant adversary proceeding. The plaintiff alleges that the debtor, a young woman in her mid-twenties, through manipulative and fraudulent methods described in the complaint, financially exploited Virgil Cooke, the plaintiff's father, a widower in his mid-eighties. According to the complaint, on August 2, 2006, the plaintiff filed suit against the debtor in the Chancery Court for Sullivan County, Tennessee alleging undue influence, fraud, conversion, and exploitation of, or theft from, an elderly person, in violation of the Tennessee Adult Protection Act, codified at Tennessee Code Annotated § 71-6-101, *et seq*. After a jury trial and a ruling by the chancellor on a motion for attorney fees, an amended judgment[1] was entered on February 26, 2008, against the debtor in favor of the plaintiff in the amount of $230,571.24. The plaintiff contends that this judgment is nondischargeable under § 523(a)(2)(A), § 523(a)(4) and § 523(a)(6) of the Bankruptcy Code.

Presently before the court is plaintiff's motion for summary judgment filed March 6, 2009, in which she asserts that there is no genuine issue of material fact and that she is entitled to judgment

---

[1] The state court action was not only against the debtor but also against her father, and included allegations that two conspired to deprive Mr. Cooke of his assets. After the original judgment was entered on January 22, 2008, the co-defendant moved for, and was granted, a remittitur. The amended judgment reduced the attorney fees assessed against the co-defendant while correspondingly increasing the fees owed by the debtor from $42,183.87 to $49,109.58.

as a matter of law under § 523(a)(4) and § 523(a)(6) based on the doctrine of collateral estoppel. According to plaintiff, the elements of each section are established by the jury verdict and by the final order of the state court awarding judgment and attorney fees. More specifically, plaintiff notes that the jury found by "clear and convincing evidence" that the debtor did "improperly take or improperly receive money or property from Virgil Cooke" and awarded compensatory damages. Based on this finding, the plaintiff requested and was awarded attorney fees pursuant to Tennessee Code Annotated § 71-6-120(d) under the Tennessee Adult Protection Act, which provides that "if it is proven upon clear and convincing evidence that abuse or neglect, sexual abuse or exploitation or theft resulted from intentional, fraudulent or malicious conduct by the defendant, a claimant shall be entitled to recover reasonable attorneys' fees." Plaintiff asserts in her summary judgment motion that this judgment is nondischargeable as larceny under § 523(a)(4). Additionally, plaintiff contends that the state court judgment establishes conversion, nondischargeable as a willful and malicious injury to property under § 523(a)(6).

The debtor counters plaintiff's summary judgment motion with her own summary judgment motion, also filed March 6, 2009. The debtor argues that the issues of fraud, theft, and conversion were pled and actually litigated in state court, and that therefore plaintiff is precluded by the doctrines of collateral estoppel and res judicata from relitigating these issues in bankruptcy court. The debtor notes that after the trial before the jury on all issues raised in the state court complaint, the plaintiff proposed a special jury verdict that sought a ruling by the jury on each of these issues, i.e., undue influence, fraud, conversion, and exploitation of, or theft from, an elderly person under the Tennessee Adult Protection Act. Although jury instructions on all of these issues were given to the jury, the judge rejected the plaintiff's detailed jury verdict in favor of a simpler verdict form that merely asked whether the debtor improperly took or received money from Mr. Cooke, whether this finding was proven by clear and convincing evidence, the amount of compensatory damages awarded, and whether an award of punitive damages by clear and convincing evidence was established and, if so, the amount. According to the debtor, because the jury did not award punitive damages which is based on the clear and convincing evidence standard and because nondischargeability similarly must be shown by clear and convincing evidence, she is entitled to summary judgment in her favor in this action.

II.

Rule 56 of the Federal Rules of Civil Procedure, as incorporated by the Federal Rules of Bankruptcy Procedure 7056, mandates the entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S. Ct. 2505 (1986)).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)). The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp*., 477 U.S. at 325. "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite v. Timken Co.*, 258 F.3d 488, 492-93 (6th Cir. 2001). "When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wily v. United States (In re Wily)*, 20 F.3d 222, 224 (6th Cir. 1994). Denial of one party's summary judgment motion does not necessarily result in a corresponding conclusion that the opposite party is entitled to summary judgment. *See B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001).

III.

"Under res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *Brown v. Felson*, 442 U.S. 127, 131, 99 S. Ct. 2205 (1979) (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970 (1979)). "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Id.* On the other hand, "[t]he doctrine of collateral estoppel 'precludes relitigation of issues of fact or law

actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir. 1999) (citing, *inter alia*, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 n.23, 99 S. Ct. 645 (1979) ("The whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed.")). In *Brown*, the United States Supreme Court held that the doctrine of res judicata does not apply to dischargeability proceedings in bankruptcy. *Brown*, 442 U.S. at 138. Accordingly, to the extent that the debtor relies on the doctrine of res judicata to support her summary judgment motion, the motion must be denied.

The *Brown* court expressly left open the question of whether issues resolved by a state court should be given collateral estoppel effect in bankruptcy dischargeability proceedings, but subsequently answered this question affirmatively in *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S. Ct. 654 (1991). According to the Sixth Circuit Court of Appeals, collateral estoppel applies when "(1) the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such issues, and (2) the issue was fully and fairly litigated in state court." *In re Markowitz*, 190 F.3d at 461. Under Tennessee law, "collateral estoppel bars relitigation of an issue if it was raised in an earlier case between the same parties, actually litigated, and necessary to the judgment in the earlier case." *Rally Hill Prod., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 54 (6th Cir. 1995) (citing *Massingill v. Scott*, 738 S.W.2d 629, 632 (Tenn.1987)); *see also State v. Scarbrough*, 181 S.W.3d 650, 654-55 (Tenn. 2005) ("The doctrine of collateral estoppel . . . applies only when 'the issue involved in the case under consideration has already been litigated in a prior suit between the same parties . . . if the determination of such issue in the former action was necessary to the judgment.'"). Accordingly, this court must examine the issues in this adversary proceeding and compare them with the issues raised by the parties in the state court action. If the issues pled are identical to the ones herein and were actually litigated in state court and necessary to the judgment, then collateral estoppel would bar relitigation of those issues in this court.

The first issue that the plaintiff contends is established by the state court judgment is larceny

under § 523(a)(4)[2] of the Bankruptcy Code.  As previously noted, in order to determine whether collateral estoppel would preclude the relitigation of this issue, the court must first determine whether this issue is identical to one that was raised in the state court action. The treatise *Collier on Bankruptcy* observes that "[f]or purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of same.'" 4 *Collier on Bankruptcy* ¶ 523.10[2] (15th ed. rev. 2008) (quoting *Clarendon Nat'l Ins. Co. v. Barrett (In re Barrett)*, 156 B.R. 529, 533 (Bankr. N.D. Tex. 1993)); *see also Davis v. Kindrick (In re Kindrick)*, 213 B.R. 504, 509 (Bankr. N.D. Ohio 1997) ("Larceny can be defined as the actual or constructive taking away of property of another without the consent and against the will of the owner or possessor with the intent to convert the property to the use of someone other than the owner.").  It is generally recognized that larceny under § 523(a)(4), as well as its embezzlement counterpart, requires an element of fraudulent intent.  *See Dorado v. Dorado (In re Dorado)*, 400 B.R. 304, 309 (Bankr. D. N.M. 2008) ("both embezzlement and larceny include a fraudulent intent component");  *cf. McAllister v. Brady (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir. 1996) ("A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.").  This fraudulent intent may be established by an intent to permanently deprive another of his property.  *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 117 (B.A.P. 6th Cir. 2007) (citing *Fischer Investment Capital, Inc. v. Cohen (In re Cohen)*, 334 B.R. 392, 400 n.7 (Bankr. N.D. Ill. 2005)).

The state court complaint against the debtor asserted causes of action based on both common law conversion and theft under the Tennessee Adult Protection Act.  As to conversion, to be liable for this tort under Tennessee law a defendant "need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights . . . ." *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. App. 1977).  Absent a requisite showing of specific intent to defraud or to permanently deprive a party of its property, mere conversion does

---

[2] The Bankruptcy Code excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. §523(a)(4).

not rise to the level of embezzlement or larceny under § 523(a)(4). *Burlington Indus., Inc. v. Wilson (In re Wilson)*, 114 B.R. 249, 252 (Bankr. E.D. Cal. 1990). In the present case, however, the plaintiff not only alleged conversion in her state court complaint; she also alleged that the debtor had the appropriate wrongful intent. Specifically, the plaintiff alleged that the debtor "acted with intent to dispossess Mr. Cooke of his assets," that she appropriated Mr. Cooke's assets for her "own use and benefit by intentionally exercising dominion over the items in contravention of Mr. Cooke's rights," that Mr. Cooke was "incompetent" at that time, "unable to make rational choices," and without "the requisite mental capacity," and that the debtor's actions in this regard were "intentional, wilful and wanton." Because these allegations are sufficient to establish larceny under § 523(a)(4), the first element of collateral estoppel has been met.

This court makes a similar finding with respect the plaintiff's cause of action for theft under the Tennessee Adult Protection Act. Theft is not defined in the Act, other than the statement that damages are recoverable for theft "whether by fraud, deceit, coercion or otherwise." *See* Tenn. Code Ann. § 71-6-120(b). This court questions whether theft by something other than fraud or deceit would establish the necessary larceny component of fraudulent intent or intent to permanently deprive another of his property. Nevertheless, as with her conversion claim, the plaintiff additionally alleged in the state court complaint that debtor's theft was fraudulent, intentional, and willful. Specifically, the plaintiff asserted that the debtor's "coercive, manipulative, fraudulent, and other actions," including "unlawfully tak[ing] from Mr. Cooke in excess of $200,000 and possibly as much as $300,000," were "intentional, willful and wanton" and constituted theft under the Tennessee Adult Protection Act. Accordingly, the court again concludes that the elements necessary to establish larceny under § 523(a)(4) were raised in the state court action.

Moreover, it is undisputed that the issues of fraudulent or intentional conversion and theft were actually litigated in state court, the second required element of collateral estoppel. Tennessee courts have concluded that this test has been met if "the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in a prior suit." *Jenne v. Snyder-Falkinham,* 967 S.W.2d 327, 330 (Tenn. App. 1997); *see also Taylor v. Eaton (In re Eaton)*, No. 02-2064 (Bankr. E.D. Tenn. April 29, 2003) ("The actually litigated requirement requires only that the issue was effectively raised in the prior action and 'that the losing party has a 'fair opportunity

-7-

procedurally, substantively and evidentially' to contest the issue.'") (quoting *Harris v. Byard (In re Byard),* 47 B.R. 700, 707 n.9 (Bankr. M.D. Tenn. 1985)). Both parties had adequate opportunity, as neither denies, to litigate all issues involved in the state court action during the two-day jury trial conducted on November 20 and 21, 2007.

"The final requirement of collateral estoppel is that the precise issue must not only have been raised and actually litigated, but *necessary to the judgment.*" *TruPoint Bank v. Clark (In re Clark),* No. 08-5046, 2009 WL 693164, * 4 (Bankr. E.D. Tenn. March 1, 2009) (quoting *Wet Pets v. Miller (In re Miller)*, No. 96-2078 (Bankr. E.D. Tenn. May 30, 1997)); *see also In re Bursack,* 65 F.3d at 54. "Collateral estoppel requires that the determination of a factual or legal issue in a judgment is conclusive in subsequent litigation if it was 'actually litigated and determined,' and the determination was *essential to the judgment.*" *Id.* (quoting *The Spring Works, Inc. v. Sarff (In re Sarff)*, 242 B.R. 620, 624 (B.A.P. 6th Cir. 2000) (internal quotations omitted). As set forth in the special verdict form, the jury found by clear and convincing evidence that the debtor improperly took or improperly received money from Mr. Cooke, but did not specifically delineate the cause of action upon which it was awarding judgment. Because the plaintiff pled several causes of action, all of which arguably could have formed the basis for the jury's ruling, this court is unable to determine from the jury verdict alone whether the plaintiff's fraudulent conversion or theft claim was essential to the judgment. *See Massengill v. Scott*, 738 S.W.2d 629, 632 (Tenn. 1987) (In an action involving multiple claims, the Tennessee Supreme Court rejected the application of collateral estoppel because the jury's verdict was a general one.); *Dimmitt & Owens Fin., Inc. v. Green (In re Green)*, 262 B.R. 557, 571 (Bankr. M.D. Fla. 2001) (Where prior proceeding contained fraud and other counts but final judgment did not designate the basis for the judgment, collateral estoppel can not be applied in bankruptcy dischargeability action because it can not be determined that the prior fraud count was a critical and necessary part of the final judgment.). Notably, one of plaintiff's state court claims was that the debtor procured monies from Mr. Cooke by undue influence. It has been held that a state court judgment based on undue influence is dischargeable in bankruptcy because fraud is not a necessary element of the claim. *See Schweibish v. Yoshida (In re Yoshida)*, No. 08-1065, 2008 WL 5650059, *2 (Bankr. E.D. Tenn. Dec. 23, 2008).

Notwithstanding the lack of specificity in the jury verdict, the judgment in the state court

action was based not only on the jury award of compensatory damages, but also the state court judge's award of attorney fees. The plaintiff had requested in the state court complaint that she be awarded attorney fees pursuant to Tennessee Code Annotated § 71-6-120. Under this provision of the Tennessee Adult Protection Act, "if it is proven upon clear and convincing evidence that abuse or neglect, sexual abuse or exploitation or theft resulted from intentional, fraudulent or malicious conduct by the defendant, a claimant shall be entitled to recover reasonable attorneys' fees." Tenn. Code Ann. § 71-6-120(d). After the jury verdict, the plaintiff filed a motion for attorney fees, asserting that she was entitled to an award of fees pursuant to § 71-6-120(d) because the jury found in its special verdict that the debtor had improperly taken or improperly received Mr. Cooke's money or property by clear and convincing evidence. After a hearing on the motion, the state court judge entered an order on January 22, 2008, stating that "[p]ursuant to the verdict rendered November 21, 2007, the Plaintiff has prevailed on her claims against Defendants by clear and convincing evidence," and "[p]ursuant to § 71-6-120, T.C.A., Plaintiff, as the prevailing party by clear and convincing evidence, is entitled to recovery of her reasonable attorney fees." The order concluded that the requested attorney fees were reasonable and awarded judgment for the amount requested, adding them to the compensatory damages awarded by the jury. Subsequently, on February 26, 2008, an amended judgment was entered by the state court, entering a judgment in favor of the plaintiff against the debtor for the amount of damages awarded by the jury and for the attorney fees awarded by the judge. Because the state court's only possible basis for awarding attorney fees was pursuant to Tennessee Code Annotated § 71-6-120(d), the plaintiff argues in this adversary proceeding that the issue of theft within the meaning of this provision was essential or necessary to the final judgment.

The debtor has not specifically responded to or challenged this assertion. This court notes, however, that the attorney fee provision of Tennessee Code Annotated § 71-6-120 does not authorize an award of attorney fees merely if the wrongful conduct is established by "clear and convincing evidence." Rather, the precise language of the statute states that a claimant shall be entitled to recover reasonable attorney fees if it is proven upon clear and convincing evidence that "abuse or neglect, sexual abuse or exploitation or theft *resulted from intentional, fraudulent or malicious conduct by the defendant*." Tenn. Code Ann. § 71-6-120(d) (emphasis added). In the state court

-9-

action, the jury found, as indicated on the special verdict form, that the debtor "improperly took or improperly received Virgil Cooke's money or property by clear and convincing evidence." However, there was no determination by the jury that the improper taking or receipt, albeit established by clear and convincing evidence, "*resulted from intentional, fraudulent or malicious conduct by the defendant*," as required by Tennessee Code Annotated § 71-6-120(d).

Arguably, this determination was made by judge himself, notwithstanding that the order awarding fees referenced the jury verdict as the basis for the award and set forth no independent factual findings except as to the reasonableness of the requested fees. On the subject of special verdicts, Tennessee Rule of Civil Procedure 49.01 provides, in part, that:

> The court shall give to the jury such explanation and instructions concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue.  If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury.  As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

In the instant case, there is no indication in the record that either party demanded that the judge submit to the jury a request for factual findings necessary for an award of attorney fees.  The plaintiff's proposed special verdict form did not set forth any question as to whether the exploitation or theft of which the plaintiff complained "resulted from intentional, fraudulent or malicious conduct by the defendant."  Thus, under Tennessee Rule of Civil Procedure 49.01, the parties waived their right to a determination by the jury of this allegation, thereby implicitly authorizing the court to make the factual finding.   And, although it appears that the state court failed to make a specific finding as to whether the debtor's conduct was "intentional, fraudulent or malicious," under Rule 49.01 the court was deemed to have made such a finding in accordance with the judgment on the special verdict.  In other words, because a finding of intentional, fraudulent or malicious conduct was a prerequisite to an award of attorney fees, the state court is deemed to have made a finding in this regard.[3]  *See* Tenn. R. Civ. P. 49.01; *see also In re Molina*, 228 B.R. 248, 252 (B.A.P. 9th Cir.

---

[3] Even if it were argued that the judge's award of attorney fees was a mistake because there
(continued...)

1998) (Notwithstanding absence of specific finding of fraud in arbitration award, state court judgment which confirmed arbitration award and awarded punitive damages for fraud was entitled to collateral estoppel effect in dischargeability proceeding because necessary fraud findings were implicit in state court's award of punitive damages for fraud.).

In summary, the issue of whether the debtor intentionally, fraudulently, or maliciously converted monies from Mr. Cooke was raised in the state court action, actually litigated, and essential to the final state court judgment. Moreover, regardless of whether the debtor's theft was intentional, fraudulent, or malicious, any of the three would be sufficient to establish the wrongful intent necessary for larceny under § 523(a)(4).[4] Accordingly, the court concludes that collateral estoppel applies and that the debtor is precluded by the plaintiff's final judgment from relitigating the issue of larceny under § 523(a)(4). Plaintiff is entitled to summary judgment on this issue.

Having reached this conclusion, it is unnecessary for this court to address whether the

---

[3](...continued)
had been no express finding of "intentional, fraudulent or malicious" conduct, the alleged error provides no basis for a collateral attack on the judgment. The state court judgment was not appealed and is final. There is no suggestion that the court lacked subject matter jurisdiction or personal jurisdiction or that the judgment is in any way void. *See Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996) (A decree of chancery court is conclusively valid against collateral attack, "unless it affirmatively appears, on the face of the record itself: (1) that the Court had no general jurisdiction of the subject matter of the litigation; or (2) that the decree itself is wholly outside of the pleadings, and no binding consent thereto is shown in the record; or (3) that the Court had no jurisdiction of the party complaining, in person or by representation of interest; in which case it is void only as to such party, or his privies.").

[4]According to the Tennessee Supreme Court,

> A person acts **intentionally** when it is the person's conscious objective or desire to engage in the conduct or cause the result. *Cf.* T.C.A. § 39-11-302(a) (1991) (criminal definition of "intentional"). A person acts **fraudulently** when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. *See First Nat'l Bank v. Brooks Farms,* 821 S.W.2d 925, 927 (Tenn.1991). A person acts **maliciously** when the person is motivated by ill will, hatred, or personal spite.

*Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).

-11-

plaintiff is also entitled to summary judgment on the issue of nondischargeability under § 523(a)(6), which excepts from discharge debts "for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). Nonetheless, the court concludes that collateral estoppel does not bar relitigation of this issue. Granted, as previously noted, the plaintiff specifically alleged in the state court complaint that the debtor's conversion of Mr. Cooke's funds was "intentional, willful and wanton," and it is undisputed that this issue was actually litigated. However, there was no allegation in the state court complaint that the allegation was malicious.[5] And, although Tennessee Code Annotated § 71-6-120(d) provides for an award of attorney fees based on intentional, fraudulent *or* malicious conduct, because this language is in the disjunctive rather than conjunctive it can not be concluded that there was a finding of malicious conduct that was necessary or essential to the judgment.

Further, the legal test for nondischargeability under § 523(a)(6) is arguably different than that for an intentional, willful or wanton conversion under Tennessee law. In *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974 (1998), the Supreme Court held that only acts of the debtor done with the intent to cause injury, as opposed to acts merely done intentionally, can constitute a willful and malicious injury under § 523(a)(6). "Negligent or reckless acts . . . do not suffice to establish that a resulting injury is willful and malicious." *Id*. at 64. Yet the jury instructions given in the state court action provided that "willful or wanton misconduct is intentional wrongful conduct done either with knowledge that loss to another will probably result or with a wanton and reckless disregard of the possible results."

IV.

The court turns now to the debtor's motion for summary judgment. The debtor maintains

---

[5] The second component of § 523(a)(6), that the injury be "malicious," requires a finding that the act was committed "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Farm Credit Servs. of Mid-Am., PCA v. Kimbrough (In re Kimbrough)*, No. 07-5084, 2008 WL 2769578, *5 (Bankr. E.D. Tenn. July 11, 2008) (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). "There must be a consciousness of wrongdoing. It is this knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to malicious under § 523(a)(6)." *Id.* (quoting *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001)).

that because the issues of fraud, theft, and conversion were pled and actually litigated in state court, the plaintiff is precluded by the doctrines of collateral estoppel and res judicata from relitigating these issues in bankruptcy court. This argument appears to confuse the concepts of res judicata and collateral estoppel. As previously noted, res judicata "bars a second suit between the same parties or their privies on the same cause of action with respect to all the issues which were or could have been litigated in the former suit." *Patton v. Estate of Upchurch*, 242 S.W.3d 781 (Tenn. App. 2007). Thus, if this adversary proceeding was the same cause of action as the state court lawsuit, the final judgment in that suit would bar all issues which could have been litigated in that cause of action, regardless of whether they were. However, the United States Supreme Court has held that dischargeability proceedings under § 523(a)(2), (4), and (6), over which the bankruptcy court has exclusive jurisdiction, represent different causes of action than the state law claims that form the basis of the dischargeability proceedings. *Brown*, 442 U.S. at 138. On the other hand, as noted, collateral estoppel "operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated *and determined* in the former suit." *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (emphasis supplied).

The debtor suggests in her summary judgment motion that the state court judge actually decided the issues raised in the state court action in the debtor's favor by refusing to include the issues in the special jury verdict. No authority is cited for this proposition, and this court knows of no authority that would support it. Except as otherwise discussed, there is no written order by the state court ruling in the form of a directed verdict or otherwise on the issues raised in the complaint, and there is nothing to indicate that the state court made such a ruling on the record but failed to memorialize it in a written order.[6] Accordingly, this court concludes that the state court's refusal or failure to include an issue in the special jury verdict form does not constitute a determination of that issue for collateral estoppel purposes.

---

[6] Moreover, the debtor's argument that the state court judge made an implicit finding in her favor on the issues of fraud, theft, and conversion is refuted by the fact that the judge awarded attorney fees, which as previously addressed, requires a determination of "intentional, fraudulent, or malicious" misconduct.

Lastly, the court turns to the debtor's contention that she is entitled to summary judgment on the plaintiff's dischargeability complaint, which must be established by clear and convincing evidence, because the state court jury did not award punitive damages, which is also based on the clear and convincing evidence standard. This argument, however, is based on a legal fallacy because the United States Supreme Court has held that the standard of proof for debts excepted from discharge under 11 U.S.C. § 523(a) is the ordinary preponderance of the evidence standard. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654 (1991). Thus, the fact that the jury did not award punitive damages, which requires proof by clear and convincing evidence as the debtor noted, is no bar to a determination in this proceeding by the lesser preponderance of the evidence standard. *Cf. In re Molina*, 228 B.R. at 252 (An award of punitive damages entered under California law based on clear and convincing evidence of fraud would be binding on the bankruptcy court in a dischargeability action which utilizes the less onerous burden of proof.).

Moreover, "[i]t is established law that an award of punitive damages lies within the discretion of the trier of facts." *Testerman v. Tragesser*, 789 S.W.2d 553, 557 (Tenn. App. 1989). Consequently, the mere fact that the jury exercised its discretion by not awarding punitive damages is not determinative of any issue in this action.

V.

In conclusion, the debtor's motion will be denied and the plaintiff's motion granted only as to her § 523(a)(4) cause of action. Accordingly, a final order will be entered declaring that the plaintiff's state court judgment against the debtor in the amount of $230,571.24 is nondischargeable.

# # #